THE W. C. BARLETT LUMBER COMPANY *v.* BROOKVILLE TITLE & TRUST COMPANY

(No. 8924)

Submitted October 3, 1939. Decided November 28, 1939.

G. *Gilmer Easley,* for appellant.

S. H. *Sharp,* for appellee.

Fox, PRESIDENT:

The W. C. Barlett Lumber Company complains of a decree of the circuit court of Greenbrier County, entered on the 10th day of February, 1939, for the sum of $1200.00, and prosecutes this appeal therefrom.

The appellant was incorporated in the year 1918, and in the year 1923, the Spring Creek Lumber Company was incorporated, under the laws of this state, and all of its stock was subscribed for and owned by the appellant, except qualifying shares. A number of the stockholders and directors of the Brookville Title & Trust Company, of Brookville, Pennsylvania, appellee, and hereinafter called the "Trust Company", were stockholders and directors in the W. C. Bartlett Lumber Company, hereinafter called "Bartlett Company", and also stockholders and directors in the Spring Creek Lumber Company. The personnel of the board of directors of the two lumber companies was the same.

On the 25th day of June, 1926, the Spring Creek Lumber Company executed a deed of trust to the Trust Company on its property located in Greenbrier County, West Virginia, to secure the payment of the sum of $100,000.00, represented by two hundred bonds of the par value of $500.00 each, fifty of which bonds were to be paid on the

first day of January in the years 1928 to 1931, both inclusive.

Prior to the execution of this trust an agreement had been entered into between the Spring Creek Lumber Company and the Trust Company, by which the Trust Company was to purchase all of said bonds for $95,000.00, and the bonds were purchased by the Trust Company under this agreement. The last of the bonds were paid on the second day of July, 1930, and need not be further considered. On the 25th day of June, 1935 the Spring Creek Lumber Company, in pursuance of a resolution adopted by it on May 28th of that year, conveyed to the Bartlett Company, as a liquidating dividend in kind, all of the property then owned by it, and subsequently, early in the year 1936, the Bartlett Company requested of the Trust Company that it release the deed of Trust of June 25, 1926, which request not being complied with, this suit was instituted under the provisions of Code, 38-12-10, to secure said release. The cause was matured for hearing upon an order of publication against the Trust Company, and a decree entered on the 29th day of July, 1936, directing the execution of a release of the said deed of trust, by the clerk of the circuit court of Greenbrier County, and such release was executed and recorded. On the 2nd day of May, 1938, the Trust Company filed its petition, praying that it be permitted to make defense to the original petition of the appellant herein, and that the decree of July 29, 1936, be set aside and the release executed under the terms thereof cancelled. Such permission was granted and on July 26, 1938, the Trust Company filed its answer alleging that "there are certain costs, expenses, and attorney fees amounting to $1500.00, which were necessary and incident to the liquidation and carrying of said mortgage or trust deed, and paid by this defendant, which have not been paid", and contending that such sum is due it and asking that it be decreed as a valid and subsisting lien against the properties conveyed by the said deed of trust, as provided by the terms thereof. Proof was taken and the cause submitted, with the result that

on the 10th day of February, 1939, the circuit court entered a decree in favor of the Trust Company for $1200.00, and set aside the said release.

The Trust Company bases its claim for compensation under the provision of the deed of trust which reads as follows:

> "It shall be entitled to reasonable compensation for its services hereunder and to repayment of all sums expended by it hereunder plus interest thereon at the rate of 8% per annum, and shall have a lien for compensation and expenses on the mortgaged property prior to the lien for said bonds and coupons; and the Mortgagor agrees to pay said compensation and expenses (plus interest as aforesaid) promptly upon demand from time to time."

An attempt is made to show that prior to the execution of the deed of trust there was an understanding between the parties as to the meaning of this language quoted above, but we do not think such testimony can be considered, because as we have held, "an unambiguous written agreement entered into as the result of verbal or written negotiations will, in the absence of a showing of fraud or mistake, be conclusively presumed to represent the final agreement of the parties thereto, and may not be varied or contradicted by evidence of conversations or statements had or made at the time of or prior to its execution." *Central Trust Co.* v. *Virginia Trust Co.*, 120 W. Va. 23, 197 S. E. 12, 13. However, this rule does not preclude a showing of later interpretation and conduct operating as a waiver of the right to particular compensation, and the evidence bearing upon whether or not the Trust Company construed this provision as justifying the character of claim it now asserts is, we think, admissible; this being true, we are warranted in discussing what occurred between these three corporations subsequent to the date of the execution of the deed of trust.

The fact that the managing officials of the three corporations had a community of interest cannot be denied;

and when the Spring Creek Lumber Company found itself in need of financing its business, the Trust Company, in advance of the preparation of the papers in connection therewith, proposed to purchase the contemplated issue of bonds at ninety-five cents on the dollar, provided it should be made the trustee in the deed of trust to be executed to secure the same. These bonds were to be repaid by the creation of a sinking fund by the deposit with the Trust Company of $2.50 on each thousand feet of logs and lumber sold from the premises covered by the deed of trust. All of the bonds were purchased by the Trust Company at ninety-five cents on the dollar, and the witness Conrad says the Trust Company agreed to sell the entire bond issue, and the charge for handling that sale was to be five per cent. Shortly after the bonds were purchased, some of them were sold to associates of the managing officials of the lumber companies and the Trust Company at ninety-five cents on the dollar. Some of these bonds were sold to W. N. Conrad and Gill C. Retz, both of whom were directors of all three corporations. The Trust Company, however, retained $56,500.00 of these bonds and they were paid at maturity. Shortly after the bond issue was paid in full, the Trust Company requested the Spring Creek Lumber Company to pay the sum of $33.03 to balance its bond account, and this sum was paid on January 30, 1931; later, on May 19, 1931, the Trust Company requested payment of an additional sum of $9.00 to cover taxes paid on some of the bonds, and this request was complied with on the day following. The record shows that the claim of the Trust Company for services as trustee under the deed of trust herein was first asserted in April, 1936. When the resolution of May 28, 1935, discontinuing the business of the Spring Creek Lumber Company, was adopted two of the directors of the Trust Company were present and participated in such action. On July 11, 1935, some six weeks after this resolution, the Trust Company communicated with the Barlett Company, asking that certain liquidating dividends then being paid on its entire capital stock be paid to the Trust

Company by reason of its holding as collateral security for loans certain shares of said stock. It will be noted that this letter refers to the stock of the Barlett Company, and not the Spring Creek Lumber Company, but the contention is made, as we understand, that the letter grew out of the knowledge on the part of the Trust Company that the liquidation mentioned was occasioned by the discontinuance of business by the Spring Creek Lumber Company and the transfer of all of its assets to the Barlett Company. James B. Porter and Gill C. Retz, stockholders and directors in the three corporations involved, each testify that the claim now asserted by the Trust Company is invalid and improper, and that it never was the intention of the Trust Company to make such a charge until after some disagreement between the officials of the lumber companies and W. N. Conrad, who had theretofore been not only a director in but attorney for all three of said corporations. It is contended by the appellant that the Trust Company is estopped from asserting its claim, particularly on the ground that it accepted dividends which, although paid by the Barlett Company, in fact represented a distribution of the property of the Spring Creek Lumber Company.

We are of opinion that the trial court erred in holding that the Trust Company was entitled to the sum decreed to it. The point raised by the appellant that the answer of the Trust Company, setting up the claim for certain costs, expenses and attorney fees, precludes an allowance for the services shown by the proof to have been rendered, has some merit, as has the contention that the acceptance of the liquidating dividends mentioned by the Trust Company estops it from asserting its present claim; but we choose to base our decision on broader grounds. The provision in the deed of trust must be held to represent the final agreement of the parties with respect to the compensation to be paid to the Trust Company; but we have the right to construe the meaning of the language used in the light of what subsequently occurred in connection with this transaction. It is quite clear that the float-

ing of this loan was one of mutual benefit to all of the parties concerned. A perfectly sound investment was sold to a friendly trustee, at a discount of five per cent, which discount was described by the attorney who prepared the papers in connection therewith as the charge for handling the sale. The bonds were purchased by the Trust Company and held by it until maturity, except those sold to officials of the three corporations or their close associates. The only expenses shown in connection with the trust appear to have been paid from time to time as is evidenced by the fact that when the bonds were all paid in full, a small overdraft of $33.03 remained which was promptly paid, and some months later another small item of expense was likewise paid. The services for which compensation is claimed were routine services performed in the regular course of business, and at no extra cost to the Trust Company. At no time prior to 1936, more than five years after the bonds were paid, did the Trust Company ever assert any claim for the compensation now sought. The very terms of the writing under which it now claims compensation provide that the compensation mentioned should be paid "promptly upon demand from time to time." It is inconceivable that if it had been intended to assert this claim, such claim would not have been presented within a reasonable time after the payment of the bonds. Instead of doing so, the Trust Company billed the Barlett Company for small amounts early in 1931, and made no claim whatever for any further compensation until five years later when, disagreements having developed between the ruling spirits of the two corporations, the Trust Company and the parent lumber company, this claim is for the first time asserted. We see no equity in the claim. It is true that some work must necessarily have been done in receiving payments into the sinking fund, and in paying coupons, and paying the bonds at maturity or in advance thereof, but it must be borne in mind that, as to more than fifty per cent of these bonds, the payments merely represented the collection by the bank of a debt due it, and as to the remaining por-

tion, they were held in comparatively large amounts, according to the record, and by people closely associated with the bank. Then, too, aside from the interest on the bonds, the Trust Company admits a profit of $2825.00 paid to it for handling the sale, and which we think, under all the circumstances, covered the character of work for which the Trust Company now claims compensation.

The decree of the circuit court of Greenbrier County is reversed and this cause is remanded for further proceedings not inconsistent with this opinion.

*Reversed and remanded.*